**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

Signal Advisors USA, Inc.,

        Plaintiff,

vs.

Jonathan Mason Entingh and Reis Renneker,

        Defendants.

Case No.:

Hon.

Magistrate Judge

---

## COMPLAINT

NOW COMES Plaintiff Signal Advisors USA, Inc. ("Signal Advisors" or "Plaintiff"), by and through its attorneys, HOOPER HATHAWAY, P.C., and for its Complaint against Defendants Jonathan Mason Entingh ("Entingh") and Reis Renneker ("Renneker," and collectively, the "Defendants"), states as follows:

## PARTIES

1. Signal Advisors is a Delaware corporation with a principal place of business at 1555 Broadway Street, Detroit, Michigan.

2. Entingh is an individual who, on information and belief, resides at 13811 Cable Road SW, Pataskala, Ohio 43062.

3. Renneker is an individual who, on information and belief, resides at 2717 Colonial Trail, Bloomfield Hills, Michigan 48304.

## JURISDICTION AND VENUE

4.   This Court has subject matter jurisdiction over the claims in this case pursuant to 18 § USC 1836(c).

5.   Venue is appropriate in this court pursuant to 28 USC § 1391(b)(2).

## FACTS

6.   Signal Advisors business includes an independent marketing organization (IMO), and was founded to help independent insurance advisors become more successful with a world-class software platform, and expert analysis on complex insurance strategies throughout the United States.

7.   As part of its business operations, Signal Advisors develops and maintains certain confidential and proprietary information "Trade Secrets."  This information includes, but is not limited to:  Signal Advisors' intellectual property, technical specifications and methodologies, product information, processes, techniques and applications; know-how; improvements; research and development; innovations; discoveries; customer information; business plans; customer requirements, long range goals and strategies and other confidential and proprietary information related to Signal Advisors' competitive tactics and methods of operation.

8.   Signal Advisors' Trade Secrets have been developed and continuously refined. Signal Advisors has spent significant effort and financial resources in

2

developing its Trade Secrets, which gives Signal Advisors an advantage over its competitors, and it takes reasonable and appropriate measures to maintain the secrecy of its Trade Secrets.

9.   To protect its Trade Secrets, Signal Advisors has implemented several measures that include, among other things, maintaining an Employee Inventions and Proprietary Information Agreement ("EIPIA")  and requiring that all employees adhere to its EIPIA as a condition of their employment; requiring that employees execute non-compete agreements expressly promising to protect Signal Advisors' Trade Secrets; implementing  security measures that restrict access to the Trade Secrets; limiting access to the information databases where Trade Secret information is stored to authorized personnel; and restricting access to such information with password protections, deactivating an employee's ability to access Signal Advisors' Trade Secrets upon the cessation of their employment, and otherwise limiting the dissemination of Trade Secrets.

10.  Signal Advisors has expended significant time, money and effort specifically to develop and maintain its platform, including its unique in-force policy platform offering, marketing and development plans, customer relationships, and corporate goodwill to provide cost effective, reliable, and sustainable product lines and services to its advisors.

11. Signal Advisors' platform includes the in-force policy offering ("Signal IFP platform"), which is one of a kind in the insurance industry and revolutionizes the way insurance advisors can manage their customers' active insurance portfolios.

12. Signal Advisors has also expended significant resources to train and develop its software engineers and product managers including the Defendants, in its platform and services.

13. Throughout the course of its business, Signal Advisors has expended significant resources and effort to develop proprietary trade secret information, including, but not limited to the Signal IFP platform, and has taken proactive measures to maintain the secrecy of its trade secret information.  This information is maintained in secure data systems and is not generally known to the public.  Such information, if obtained, could be used by a competitor to steal Signal Advisors' platform, business advantages, plans and customers.

14. Defendant Entingh became employed with Signal Advisors on or about April 26, 2021, and in connection with his employment executed an Employee Inventions and Proprietary Information Agreement (**Exhibit A,** "Entingh EIPIA").

15. Entingh was the Product Manager for Signal Advisors' Signal IFP Platform and in that position had direct responsibility over the Signal IFP Platform,

including in connection with communications with Signal Advisors' customers and business partners. Entingh was highly compensated by Signal Advisors as the Product Manager for the Signal IFP Platform.

16. Defendant Renneker became employed as a Senior Software Engineer on or about March 8, 2021, and in connection with his employment executed an Employee Inventions and Proprietary Information Agreement (**Exhibit B,** "Renneker EIPIA").

17. Renneker was the Senior Software Engineer, whose responsibilities included helping build the Signal IFP Platform. Renneker was highly compensated by Signal Advisors as the Senior Software Engineer helping build the Signal IFP Platform.

18. Entingh and Renneker resigned from Signal Advisors within a month of one another, and, upon information and belief, initially took jobs that were not in violation of their EIPIA agreements.

19. In or around January 2023, on information and belief, Defendants organized Vigil Software, Inc. ("Vigil").

20. Defendants represented to Signal Advisors that Vigil was merely a "forms library" for insurance carrier forms.

21. In the spring of 2023, Defendants contacted Plaintiff to provide a demonstration of their product in order to sell their product to Plaintiff.

22. The demonstration revealed that the Defendants built their own in-force policy management platform (the "Vigil IFP Platform") that competes with Signal Advisors and clearly copied elements of the Signal IFP Platform that the Defendants helped develop and build at Signal Advisors.

23. The Signal IFP Platform includes a unique one-click annual review, which automatically alerts advisors when a policy holders annual review is coming up and provides automated information regarding the in-force policy.   A screen shot of the Signal Advisors annual review function is below:



24. The Defendants' Vigil IFP Platform demonstration to Signal Advisors included the following nearly identical "annual review" function:



25. The Signal IFP Platform includes an "All Policies" function, a screen shot of which is attached as **Exhibit C**. Attached as **Exhibit D** is the Defendants' All Policies platform function.

26. The All Policies function consolidates the in force policies so that they may be viewed to optimize visibility and convenience for the advisors. The All Policies function for both the Signal IFP Platform and the Defendants' platform includes substantially identical information including:

   a. List of all policies

   b. Policy owners

   c. Policy number

   d. Carrier and product

   e. Current value/balance of the account

   f. Most recent update/sync.

27. One of Entingh's responsibilities while at Signal Advisors was developing a system to automate data points through feeds that are not included on the original policy application, and that change over time ("Automated Data feature"). As an example, Defendants assisted in the development of the "Current Value" feature in the Signal IFP Platform, and implemented the same feature in Defendants' Vigil IFP Platform calling it "Balance."

28. The Signal IFP Platform includes a policy details view that provides a snapshot consolidated view of a client's policy details.  Attached as **Exhibit E** is a screen shot of the Signal IFP Platform policy details view. The Vigil IFP platform also contains a policy details view that provides a snapshot consolidated view of a client's policy details. Attached as **Exhibit F** is a screen shot of Defendants' platform policy details view.  The policy details view for the Signal IFP Platform, and the Defendants' platform includes substantially identical information including:

   a. Product name and Insurance Carrier

   b. Client name

   c. Policy number

   d. Policy issue date

   e. Lead source

   f. Premium

   g. Annuity type

   h. Qualification type

   i. Duration

29. While working for Signal Advisors Defendants also assisted in the development of an Automated Data feature to include a penalty free withdrawal value function in the Signal IFP Platform. Developing the penalty free withdrawal

value function was very complex, and Signal Advisors expended a significant amount of time and resources developing that function. Defendants have now included that penalty free withdrawal value function in the Vigil IFP Platform. (Ex. F).

30.  Upon information and belief, Defendants were able to quickly include features in the Vigil IFP Platform because of their prior access to, and improper use of, Signal Advisors' proprietary Trade Secret information.

31.  Defendant Renneker's LinkedIn page includes the following description of the launch of its Vigil IFP Platform, which includes precisely what the Defendants were paid to do at Signal Advisors and is in direct competition with Signal Advisors:

> Some time ago, my co-founder and I set out to understand the different ways IMOs generate value for their advisors. Through our research we found teams spending exorbitant amounts of time dealing with in force policy management.
>
> We're seen simple policy change requests take weeks and involve 15+ steps.  Emails, scanning, fax machines, setting timers to call the carrier every few days to check status! ...Our mission:  make inforce policy management a breeze. Give teams time back.  Help advisors and IMOs spend more time with clients, not managing policies. (**Exhibit G**).

32.  Vigil's LinkedIn page includes the following description of its business, which is in direct competition with Signal Advisors, and which was built with Signal Advisors' Trade Secrets (**Exhibit H**).

> Vigil is a software and data platform that is built for annuity carriers and distributors to provide steller inforce policy service to their customers.  With a collaborative issue-tracking platform, forms management library and API, we're the first in the industry to automate the post-issue process at scale.

33. Section 3 of the Defendants' EIPIAs prohibit the use or disclosure of any of Signal Advisors' Proprietary Information, other than within the scope of their employment and includes a notice of whistleblower immunity as required by the Defend Trade Secrets Act.  (Exs. A, B).

34. Defendants agreed in the EIPIAs, to assign all right, title and interest in and to all Inventions conceived, developed, reduced to practice or set out in any tangible medium of expression or otherwise created, in whole or in part by Defendants during their employment with the Company.  (Exs. A, B at Section 2.b.)

35. Section 4 of the Defendants EIPIAs include post-employment restrictions that include: a 1-year restriction against engaging in "Competitive Activities."

36. Competitive Activities is defined as: "any direct or indirect non-Company activity (i) that is the same or substantially similar to Employee's responsibilities for the Company that relates to, is substantially similar to, or competes with the Company (or its demonstrably planned interests) at the time of Employee's termination from the Company; or (ii) involving the use or

disclosure, or the likelihood of the use or disclosure, of Proprietary Information." (Exs. A, B at Section 4.a).

37. The EIPIAs reasonably restrict Defendants from engaging in any Competitive Activities "(I) anywhere the Company offers its services or has customers during my employment with the Company or where my use or disclosure of Proprietary Information could materially disadvantage the Company regardless of my physical location; or (II) anywhere the Company offers its services or has customers and where I have responsibility for the Company or (III) anywhere within a fifty (50) mile radius of any physical location I work for the Company." (Exs. A, B at Section 4.d).

38. The Defendants' EIPIAs restrict each of them for twelve (12) months following the termination of their employment.  The twelve-month restriction is increased by the period of time beginning from the commencement of a violation of the restrictions until cured. (Exs. A, B at Section 4.d).

39. The restrictions on time and geographic area contained in the post-termination restrictive covenants in the Defendants' EIPIAs are reasonable.

40. The Defendants have been engaging in Competitive Activities using Signal Advisors' Proprietary Information since at least January 2023, in violation of the obligations contained in their EIPIAs.

41.  The Defendants have, on information and belief, shared Signal Advisors'
     Proprietary Information with Vigil, with one or more of Signal Advisors'
     competitors, and with one or more potential investors in violation of their
     obligations contained in their EIPIAs.

42.  At the time of their respective departures from employment with Signal
     Advisors, each of the Defendants was reminded of their obligations under the
     EIPIA, and each affirmed that they understood.

43.  Upon information and belief, Defendants have provided demonstrations of the
     Vigil IFP Platform, and sought to offer the Vigil IFP Platform, to one or more
     of Signal Advisors' competitors.

44.  Upon information and belief, Defendants have provided demonstrations of the
     Vigil IFP Platform to one or more investors to obtain funding for Vigil and
     further compete with Signal Advisors.

## COUNT I –
## VIOLATION OF THE DEFEND TRADE SECRETS ACT

45.  Signal Advisors incorporates by reference the preceding paragraphs of this
     Complaint as though fully set forth herein.

46.  As described above, Signal Advisors has developed, maintained, and is the
     owner of significant Trade Secrets.

47.  Signal Advisors' Trade Secrets are used in interstate commerce.

48. Signal Advisors derives economic value from its Trade Secrets not being generally known, or readily ascertainable through proper means, by other persons who could obtain economic value from their disclosure or use.

49. Signal Advisors undertakes reasonable efforts to maintain the secrecy of its Trade Secrets.

50. Defendants were exposed to Signal Advisors' Trade Secrets throughout their employment.

51. Under the Defend Trade Secrets Act, 18 USC §1836, *et seq.* ("DTSA") the Defendants have a duty not to misappropriate information they know or have reason to know were Trade Secrets.

52. Defendants misappropriated Signal Advisors' Trade Secrets in developing the Vigil IFP Platform, and in marketing the Vigil IFP Platform to investors and competitors of Signal Advisors, on information and belief.

53. Subject to a reasonable opportunity for investigation and discovery, Defendants' conduct was willful, malicious and/or in bad faith.

54. Signal Advisors has been irreparably damaged by Defendants' misappropriation of Trade Secrets.

55. Signal Advisors requests that Defendants be ordered to return all Trade Secrets in their possession; that they be enjoined from using any Trade Secrets in the future, including by using those Trade Secrets in competition with Signal

Advisors; and that Signal Advisors recover damages and all other relief it may

be entitled to as a result of Defendants' wrongful conduct.

**COUNT II –**
**BREACH OF CONTRACT**

56. Signal Advisors incorporates the preceding paragraphs by reference as though

    fully set forth herein.

57. The EIPIAs Signal Advisors entered into with the Defendants are valid, binding

    and enforceable contracts. (Exs. A, B).

58. As more fully set forth above, each of the Defendants breached the EIPIA

    agreements by:

    a. Using or disclosing Signal Advisors' Proprietary Information in

       violation of Section 3 of their EIPIAs by, among other things, utilizing

       Signal Advisors Proprietary Information in the development of the

       Vigil IFP Platform;

    b. Engaging in Competitive Activities in violation of Section 4 of their

       EIPIAs, by, among other things, launching Vigil, a business that is

       competitive with Signal Advisors within twelve months of the

       termination of their employment from Signal Advisors, in the

       geographic regions in which Defendants are prohibited from engaging

       in Competitive Activities;

14

c.   Engaging in Competitive Activities in violation of Section 4 of their EIPIAs, by, among other things, launching the Vigil IFP Platform within twelve months of the termination of their employment from Signal Advisors, in the geographic regions in which Defendants are prohibited from engaging in Competitive Activities; and

d.   Such other breaches as may be learned through the course of discovery.

59.   Signal Advisors has been irreparably damaged by Defendants' breaches and is entitled to injunctive relief pursuant to Section 4.b.iii of the EIPIAs, in addition to all other damages and remedies to which Signal Advisors is entitled as a result of the breach.

**COUNT III –**
**VIOLATION OF MICHIGAN UNIFORM TRADE SECRETS ACT**

60.   Signal Advisors incorporates the preceding paragraphs by reference as though fully set forth herein.

61.   Signal Advisors Proprietary Information constitutes Trade Secrets Under MCL § 445.1901, *et seq*.

62.   By acquiring, disclosing, and/or using Signal Advisors' Trade Secrets in the development of the Vigil IFP Platform, and launching Vigil, a competing company, including with Signal Advisors' Trade Secrets related to the Signal IFP Platform, the Defendants have misappropriated Signal Advisors Trade Secrets.

63. Subject to discovery, Defendants have willfully and maliciously misappropriated Signal Advisors' Trade Secrets with the specific intent to divert Signal Advisors' business and/or goodwill.

64. Signal Advisors has been and will continue to be irreparably harmed by the Defendants unlawful conduct and its remedies at law are inadequate.

## RELIEF REQUESTED

WHEREFORE, Signal Advisors requests the following relief:

a. Injunctive relief prohibiting the Defendants from breaching the terms of the EIPIAs;

b. An extension of the restrictive covenants equal to the amount of time that the Defendants have been in violation of the EIPIAs

c. A return of all Signal Advisors' Proprietary Information and Trade Secrets;

d. Judgment against Defendants for compensatory damages, punitive damages, costs, and attorney's fees; and

e. All other relief deemed appropriate by this Court.

Respectfully submitted,

HOOPER HATHAWAY, P.C.

Dated:   October 13, 2023          BY:   /s/ Angela L. Jackson
                                         Angela L. Jackson (P53930)
                                         126 South Main Street
                                         Ann Arbor, MI  48104
                                         (734) 662-4426
                                         ajackson@hooperhathaway.com
                                         Attorney for Plaintiff

17